UNITED STATES DISTRICT COURT   **12 M  058**
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------  x
IN THE MATTER OF THE APPLICATION OF    : TO BE FILED UNDER
THE UNITED STATES OF AMERICA FOR A     : SEAL
SEARCH WARRANT FOR THE PREMISES KNOWN  :
AND DESCRIBED AS A UPS MAILBOX #301    : AFFIDAVIT
LOCATED AT 315 FLATBUSH AVENUE,        : IN SUPPORT OF
BROOKLYN, NEW YORK, AND ALL LOCKED AND : APPLICATION FOR
CLOSED CONTAINERS WITHIN               : SEARCH WARRANT
------------------------------------------  x
```

```
STATE OF NEW YORK            )
COUNTY OF NEW YORK           : ss.:
EASTERN DISTRICT OF NEW YORK )
```

Anthony Scotto, a Special Agent with the Drug

Enforcement Administration (the "DEA"), being duly sworn, deposes

and says as follows:

<u>INTRODUCTION</u>

1.    I currently serve as a Special Agent with the DEA

and a, a "federal law enforcement officer" within the meaning ot

Federal Rule of Criminal Procedure 41(a)(2)(C).  I have been

assigned to the New York Drug Enforcement Task Force since 2007.

I am one of the law enforcement officers with responsibility for

this investigation.  During my career in law enforcement, which

began 27 years ago, I have participated in numerous

investigations of unlawful drug distribution.  During the course

of these investigations, I have conducted or participated in the

execution of numerous search warrants.  Through my training,

education, and experience, I have become familiar with the manner

in which illegal drugs are distributed; the way in which such

drugs are prepared, packaged, and sold on the street; the methods of payment for such drugs; and the methods that are used to disguise the source and nature of the profits made by drug dealers.  This affidavit is respectfully submitted, pursuant to Federal Rule of Criminal Procedure 41, in support of an application for a warrant to search the premises known and described as A UPS MAILBOX #301 LOCATED AT 315 FLATBUSH AVENUE, BROOKLYN, NEW YORK, AND ALL LOCKED AND CLOSED CONTAINERS WITHIN (collectively, the "PREMISES").

2.    I make this affidavit, in part, on personal knowledge based on my participation in this investigation, and, in part, upon information and belief.  The sources of my information and belief include conversations with other law enforcement agents and reviews of reports and other documents prepared by other law enforcement officers.

3.    Throughout this affidavit, where I assert that a statement was made, I was not the individual to whom the statement was made, unless I specifically so state.  Such statements are set forth in substance and in part, unless otherwise indicated.  Similarly, information contained in this affidavit resulting from observation, except where otherwise specifically indicated, does not set forth my personal observations, but rather was provided to me by other law enforcement officers who observed the events described, and to

2

whom I have spoken or whose reports I have read.

      4.   Furthermore, the facts and circumstances of this investigation have been summarized for the specific purposes of this application.  No attempt has been made to set forth the complete factual history of this investigation or all of its details.  In making this application, I am relying only on the facts stated herein.

<u>THE PREMISES</u>

      5.   The Premises is located at the "UPS Store" at 315 Flatbush Avenue in Brooklyn, New York (the "Store").  From speaking to an employee of the Store, I have learned that, for a fee, individuals may maintain a mailbox at the Store.  As set forth in greater detail below, the Premises consists of a mailbox, maintained at the Store, in the name of "Jonathan Kashnan."  On or about July 11, 2012, I spoke to an employee of the Store, who told me, in substance and in part, that the Premises is clearly marked with the number #301.

<u>PROBABLE CAUSE</u>

      6.   I have spoken to another law enforcement agent ("Agent-1"), from whom I learned the following, in substance and in part:

      a. On or about July 3, 2012, local law enforcement in New Jersey responded to a report of a suicide at a particular address on Jefferson Avenue in Cliffside Park, New Jersey (the

3

"Residence"). Local law enforcement found an individual (the "Individual") in the bathroom of the Residence, dead of a self-inflicted gunshot wound. Local law enforcement identified the Individual, determined that he had previously been a target of a DEA investigation, and called the DEA. Agent-1 and other law enforcement agents from the DEA proceeded to the Residence. Upon the consent of the Individual's father, Agent-1 and other law enforcement agents searched the Residence.

b. In the master bedroom of the Residence, law enforcement, including Agent-1, found a mirrored pedestal containing a "trap," or secret compartment. The trap contained approximately 5 gallons of what appeared to be gamma-hydroxybutyric acid, or "GHB."

c. In the garage of the Residence, law enforcement, including Agent-1, found a fish tank containing a trap. That trap contained approximately $360,000, ziploc bags containing loose pills, approximately 2 kilograms of what appeared to be ecstasy in powder form, and six loaded firearms.

d. In the second bedroom of the Residence, law enforcement, including Agent-1, found two ottomans, each of which contained a trap. One of the traps contained a stun gun. In addition, there was a box on the floor (the "Box"). The Box contained the following: (i) approximately 35 driver's licenses, from a variety of states, in a variety of names; (ii)

4

approximately 15 university identification cards, in names corresponding to the foregoing driver's licenses, but bearing the Individual's photograph; (iii) numerous envelopes, each of which contained the mailbox number and address of a particular UPS Store on the outside (and, in some cases, the name of the individual who the mailbox purportedly belonged to), or, in the alternative, a copy of a receipt for the purchase of a UPS mailbox at a particular location on the inside, as well as - in many cases - a mailbox key and a fraudulent identification card matching the foregoing name (which bore the Individual's photograph); and (iv) bank statements from a particular bank (the "Bank") listing numerous overseas transfers by the Individual, including transfers to India, which I know, from training and experience, to be a significant source of GHB for the United States.

7.    Agent-1 further told me, in substance and in part, that the PREMISES was one of the mailboxes for which there was an envelope and mailbox key maintained in the Box, as described above in paragraph 6.  In particular, the envelope indicated that the PREMISES purportedly belonged to an individual named "Jonathan Kashnan."

<u>Request to Search</u>

8.    Based upon the foregoing information, my training, experience, and participation in this and other narcotics

5

investigations, and my conversations with other law enforcement officers, there is probable cause to believe that the PREMISES is being used to ship and receive drugs and/or drug proceeds. Specifically, based upon my experience and training, and participation in this and other narcotics investigations, narcotics traffickers, such as the Individual, frequently use UPS mailboxes under fraudulent names to ship and receive drugs and drug proceeds in order to hide this activity from law enforcement.

9. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that there is presently concealed in the PREMISES, fruits, evidence, and instrumentalities of violations of federal law, including violations of Title 21, United States Code, Sections 841 and/or 846, which evidence consists of the items set forth in the attached RIDER.

WHEREFORE, deponent prays that search warrants be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, to search the PREMISES and to seize those items set forth in the attached RIDER A.

SPECIAL AGENT ANTHONY SCOTTO
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
11th day of ____, 2012

S/Gold

THE HONOR
UNITED S'                    GE
EASTERN

7

## RIDER A

PROPERTY TO BE SEIZED AT A UPS MAILBOX #301 LOCATED AT 315
FLATBUSH AVENUE, BROOKLYN, NEW YORK, AND ALL LOCKED AND CLOSED
CONTAINERS WITHIN

      a.   United States currency;

      b.   Narcotics;

      c.   Correspondence, including bank records and
invoices, including correspondence concerning the shipment of
currency or narcotics;

      d.   Documents concerning the use of the Premises; and

      e.   Any and all other material evidence of violations
of 21 U.S.C. §§ 841(a)(1) and 846;

      all of which constitutes evidence of violations of
Title 21, United States Code, Sections 841(a)(1) and/or 846.

1